IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY ALDRIDGE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0039-WS-B |
| | ) |
| ETHICON, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (doc. 33). The Motion has been briefed and is ripe for disposition.[1]

**I.     Background Facts.[2]**

---

[1]     This case was initially filed in the United States District Court for the Southern District of West Virginia back in 2014 as part of MDL 2327, the "Ethicon MDL." Following the close of discovery and the filing of dispositive motions, the West Virginia court transferred the matter to this District Court on January 9, 2020, based on that court's determination that this and certain other related cases "would be more expeditiously concluded in the venues from which they arise." (Doc. 43, PageID.1086.) Upon receiving the Transfer Order and case file, the undersigned ascertained that defendants had a pending summary judgment motion that had been briefed in October 2018. To ensure that all parties received a full and fair opportunity to be heard, a supplemental briefing schedule (doc. 49) was entered on January 24, 2020, authorizing any party to file a supplemental memorandum (argument and exhibits) on or before February 7, 2020. The parties elected not to supplement their briefs, and the deadline for doing so has expired.

[2]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment …. Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Accordingly, the record will be viewed in the light most favorable to plaintiffs, with all justifiable inferences drawn in their favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not
(Continued)

These claims allege injuries arising from the failure of certain mesh products manufactured by defendant Ethicon, Inc. Plaintiff Kimberly Aldridge suffered from stress incontinence for which she received medical care from Dr. Marshall Shoemaker at Thomas Hospital in Fairhope, Alabama. On January 18, 2011, as part of this course of treatment, Dr. Shoemaker performed a surgical procedure to implant in Aldridge's pelvic region an Ethicon Prolift +M ("Prolift") and an Ethicon TVT-Abbrevo ("Abbrevo"), both of which are mesh products. (Doc. 33-1, PageID.488.) Dr. Shoemaker testified that he stood by his decision to offer the Prolift and Abbrevo to Aldridge for her medical conditions. (Doc. 33-2, PageID.495.) He further testified that, while there are other ways of treating stress incontinence, "mesh is still the best procedure to do." (*Id.*, PageID.503, 506.)

At the time he performed the surgery on Aldridge, Dr. Shoemaker was familiar with the manufacturer's Instructions For Use ("IFU") for both the Prolift and Abbrevo products. (Doc. 36-7, PageID.813-14.) Dr. Shoemaker expected that the IFU would include information known to the manufacturer about how a product could harm a patient in specific ways. (*Id.*, PageID.821.) Among the types of information that Dr. Shoemaker would deem important to know would be (i) whether the device causes permanent pain, (ii) whether the device may shrink or enlarge after it is implanted, and (iii) whether the device is cytotoxic or contains cytotoxic material. (*Id.*, PageID.816-17.) As to the Prolift product, Ethicon's IFU lacked any reference to mesh shrinkage or any indication that its polypropylene mesh was cytotoxic. (*Id.*, PageID.823, 838.) However, plaintiff has identified internal Ethicon documents purporting to show company knowledge that this product was subject to shrinkage and that it had failed cytotoxicity tests. (*Id.*, PageID.823, 838.)

Aldridge began experiencing pain and discomfort within 30 days after the devices were implanted. (Doc.33-1, PageID.489.) By spring 2011, Dr. Shoemaker referred Aldridge to a urologist, Lori Fleck, M.D. (Doc. 36-7, PageID.831.) For the next several years, Dr. Fleck treated Aldridge for complications from those vaginal mesh implants. (Doc. 36-5, PageID.783.) As part of that course of treatment, in 2013 and 2016, Dr. Fleck performed surgeries to remove

---

proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [plaintiffs'] version of the facts drawing all justifiable inferences in [plaintiffs'] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

these Ethicon mesh products from Aldridge's body. (Doc. 36-10, PageID.885; Doc. 36-13, PageID.904.) Dr. Fleck has opined that these surgeries were medically necessary to treat Aldridge's ongoing complaints of pain, discomfort and infections in the area where those devices had been implanted. (Doc. 36-5, PageID.784-85.) Aldridge complains that she continues to suffer pain and discomfort with her pelvic area and back related to the implantation of Ethicon products in her body. (Doc. 33-1, PageID.490.)

Plaintiff's expert Bruce Rosenzweig, M.D., has offered opinions that Aldridge's injuries were directly caused by the Abbrevo and Prolift mesh devices, including the following characteristics of those products: "chronic inflammation and chronic foreign body reaction," and "shrinkage/contraction of the encapsulated mesh." (Doc. 36-1, PageID.575.) Dr. Rosenzweig also opines that Aldridge was unable to make a fully informed medical decision before implantation of the Ethicon mesh products because Ethicon failed to disclose known risks about these products in the IFUs. (Doc. 36-1, PageID.578.) Another plaintiff's expert, Ralph Zipper, M.D., has opined that the IFU for the Prolift product falsely stated that the mesh remained soft and pliable, and was not subject to degradation and weakening, when in fact studies had previously shown the contrary. (Doc. 36-2, PageID.609-10.) Dr. Zipper specifically stated that Ethicon's failure to warn and misbranding of defects in the Prolift and Abbrevo products resulted in Dr. Shoemaker being unable to inform Aldridge of the risks and benefits of those devices, and therefore prevented her from giving informed consent for the implant procedure. (*Id.*, PageID.675.)

In their Short Form Complaint (doc. 1) filed in this action on June 12, 2014, plaintiffs, Aldridge and her husband (whose claims are derivative) bring the following claims and causes of action against defendants: (i) negligence (Count I); (ii) strict liability – manufacturing defect (Count II); (iii) strict liability – failure to warn (Count III); (iv) strict liability – defective product (Count IV); (v) strict liability – design defect (Count V); (vi) common law fraud (Count VI); (vii) fraudulent concealment (Count VII); (viii) constructive fraud (Count VIII); (ix) negligent misrepresentation (Count IX); (x) negligent infliction of emotional distress (Count X); (xi) breach of express warranty (Count XI); (xii) breach of implied warranty (Count XII); (xiii) violation of consumer protection laws (Count XIII); (xiv) gross negligence (Count XIV); (xv) unjust enrichment (Count XV); and (xvi) loss of consortium (Count XVI). Plaintiffs also purport to assert claims for punitive damages (Count XVII) and "discovery rule and tolling" (Count

XVIII); however, those claims do not represent separate causes of action under applicable law and therefore need not be addressed herein as independent grounds for relief. The Complaint was initially directed at defendants, Ethicon, Inc., Ethicon, LLC and Johnson & Johnson; however, plaintiffs have voluntarily dismissed with prejudice all claims against Ethicon, LLC. (*See* doc. 19.) Thus, plaintiffs' claims are now asserted solely against Ethicon, Inc. and Johnson & Johnson (collectively, "Ethicon").

Defendants now move for summary judgment. While their Motion is styled as one for partial summary judgment, they essentially seek entry of judgment as a matter of law in their favor on all of plaintiffs' claims and dismissal of this action in its entirety. Plaintiffs oppose most, but not all, aspects of the Motion.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III. Analysis.

#### A. *Claims as to Which Aldridge Concedes Dismissal.*

As a threshold matter, Aldridge's Response to the Rule 56 Motion identifies multiple causes of action as to which she agrees that dismissal is appropriate. Specifically, Aldridge acknowledges that the Motion is due to be granted as to Count II (strict liability – manufacturing defect), Count X (negligent infliction of emotional distress), Count XI (breach of express warranty) and Count XIII (violation of consumer protection laws). Pursuant to these concessions, the Motion for Partial Summary Judgment is **granted** as to Counts II, X, XI and XIII, all of which are **dismissed with prejudice**.

#### B. *Strict Liability Claims (Counts III, IV, V) and the AEMLD.*

As noted, Aldridge asserts a trio of strict liability claims against Ethicon, on theories of duty to warn (Count III), defective product (Count IV) and design defect (Count V). Defendants seek summary judgment on those three claims for the stated reason that "Alabama does not recognize a strict liability cause of action for products cases." (Doc. 34, PageID.512.)[3] It is technically correct, of course, that the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") "retains the negligence-based notion of 'fault' on the part of the manufacturer, supplier or retailer, rather than adhering to the 'no-fault' system posited in a traditional strict liability jurisdiction." *Bodie v. Purdue Pharma Co.*, 236 Fed.Appx. 511, 517 n.9 (11th Cir. June 1, 2007); *see also Hamby v. Baylor Trucking*, 2019 WL 3315202, *3 (M.D. Ala. July 23, 2019) ("the Supreme Court of Alabama created the AEMLD as a substitute for imposing a strict products liability regime"). It is equally true, however, that the Eleventh Circuit in the very same case cited by defendants further explained that "in practice, an AEMLD claim is similar to a traditional strict product liability claim," such that a claim for "strict product liability" is properly construed as "being based upon the AEMLD." *Bodie*, 236 Fed.Appx. at 517 n.9; *see also Miller v. Pfizer Inc.*, 2014 WL 2155020, *2 (N.D. Ala. May 22, 2014) (where plaintiff pleaded products claim under theory of strict liability, "this court will construe Count 1 as an AEMLD claim, as have other courts"); *Mosley v. Wyeth, Inc.*, 2010 WL 1416502, *4 (S.D. Ala. Apr. 5, 2010)

---

[3] Defendants have not extended this argument to Aldridge's negligence claim (Count I). Nor could they have done so persuasively, given the Alabama Supreme Court's clear guidance that "a negligence claim is not subsumed by an AEMLD claim." *DISA Industries, Inc. v. Bell*, 272 So.3d 142, 144 n.1 (Ala. 2018).

(AEMLD "governs the claims that plaintiffs alleged in this case under the heading strict liability").

The upshot, then, is that Aldridge's strict liability claims are not properly dismissed at this time; rather, they are properly construed as being AEMLD claims. Accordingly, defendants' Motion for Summary Judgment is **denied** as to Counts III, IV and V, subject to the proviso that each of these claims will be governed by the AEMLD, rather than conventional notions of strict liability, as this action proceeds.

### C. *Failure to Warn and Fraud Claims (Counts I, III, VI-IX) and Causation.*

Next, movants maintain that summary judgment is warranted on plaintiff's failure-to-warn claims (including the negligent failure-to-warn claim that is part of Count I, and the AEMLD failure-to-warn claim at Count III) by application of Alabama's learned intermediary rule. Under that doctrine, "the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the use of its product. … The adequacy of the manufacturer's warning is measured by its effect on the physician, to whom it owed a duty to warn, and not by its effect on the consumer." *Tutwiler v. Sandoz, Inc.*, 726 Fed.Appx. 753, 756 (11th Cir. Apr. 9, 2018) (citations and internal marks omitted). The critical insight for purposes of the pending Rule 56 Motion is that, pursuant to the learned intermediary doctrine in Alabama, "the patient must show that, but for the false representation made in the warning, the prescribing physician would not have prescribed the medication to his patient." *Wyeth, Inc. v. Weeks*, 159 So.3d 649, 673-74 (Ala. 2014). That is to say, Aldridge must make an adequate showing of causation in order to proceed on a failure-to-warn theory, by coming forward with evidence that had Ethicon provided a different or better warning, Aldridge's physician would not have used the subject devices as part of her treatment plan.

Defendants argue that no such showing has been made here. In so doing, they rely solely on an isolated snippet of Dr. Shoemaker's testimony. In response to an imprecise question about whether "a more in-depth discussion" of "all of the risks that we have discussed" would have altered his decision to prescribe Ethicon mesh products for Aldridge in 2011, Dr. Shoemaker answered, "I still would have – I still would have used the two products." (Doc. 33-2, PageID.498.) However, in various other places in his deposition, Dr. Shoemaker testified that it would have been important to him to know whether these devices caused permanent pain, whether the mesh was subject to shrinkage after being implanted, and whether the device was

cytotoxic. (*Id.*, PageID.816-17.) Plaintiff also presents evidence that Ethicon never alerted Dr. Shoemaker to these characteristics of the Prolift and Abbrevo products, that Dr. Shoemaker therefore never consulted with Aldridge about such risks, and that these features of the devices ultimately caused Aldridge's injuries. This evidence, viewed in the light most favorable to plaintiffs, supports a reasonable inference that Dr. Shoemaker would have discussed these risks with Aldridge had Ethicon properly warned him about their existence in the IFUs or otherwise.

On this record, then, there are genuine issues of material fact as to causation for Counts I and III because the record in the light most favorable to Aldridge shows that "the physician would have adequately informed [her] of the risks … had the [warning] been sufficient, but fail[ed] to do so on that account, and … the plaintiff would have rejected the [mesh products] if informed." *McNeil v. Wyeth*, 462 F.3d 364, 373 (5th Cir. 2006); *see generally Harper v. Janssen Pharmaceuticals, Inc.*, 2018 WL 2691492, *10 (M.D. Ala. Apr. 4, 2018) (plaintiff may pursue failure-to-warn claim by showing "that the manufacturer failed to warn the physician of a risk not otherwise known to the physician and that the failure to warn was the actual and proximate cause of the patient's injury") (citation omitted). As such, summary judgment is inappropriate on the failure-to-warn claims found at Counts I and III.

Ethicon applies the same reasoning for seeking judgment as a matter of law on the fraud and misrepresentation causes of action pleaded at Counts VI through IX. Specifically, Ethicon highlights the reasonable reliance element of a fraud claim, which it maintains Aldridge cannot satisfy. Again, plaintiff's evidence is that Ethicon fraudulently misrepresented or suppressed known risks about the Prolift and Abbrevo products in the warnings given to Dr. Shoemaker, the learned intermediary. The record in the light most favorable to plaintiff supports a reasonable inference that Dr. Shoemaker reasonably relied on the accuracy and completeness of those warnings, and that Aldridge reasonably relied on her prescribing health-care professional, Dr. Shoemaker. Accordingly, summary judgment is not appropriate on the fraud / misrepresentation claims found at Counts VI through IX.

  **D.**  *Breach of Implied Warranty Claim (Count XII).*

With respect to the breach of implied warranty claim, defendants maintain that they are entitled to judgment as a matter of law because such a claim is subsumed and governed by the AEMLD unless plaintiff shows that the product was not fit for its intended purpose.

As a matter of settled Alabama law identified by both sides' briefs, claims alleging breach of the implied warranty of merchantability are not governed by the AEMLD. *See, e.g., Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 111 (Ala. 2003) ("a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product"); *Bodie*, 236 Fed.Appx. at 523 ("courts applying Alabama law have seen fit to subsume U.C.C.-based breach of implied warranty claims into tort and product liability claims, where the product is fit for its intended use and there is no evidence of 'non-merchantability'"). Thus, the critical issue as to Count XII is whether Aldridge has identified sufficient record evidence that the Ethicon mesh products at issue were unfit for their intended purpose, so as to overcome summary judgment.

Upon careful review of the summary judgment record, the Court answers this question in the affirmative. The intended purpose of the Ethicon products was to be implanted into the pelvic region to treat stress incontinence and other medical conditions. However, plaintiff's evidence is that those products were not fit for this purpose because they were cytotoxic, subject to shrinkage, caused chronic inflammation, did not remain soft and pliable, and were subject to degradation and weakening. Taking that evidence as true for summary judgment purposes, the Court finds that plaintiff has come forward with substantial evidence that the Ethicon mesh products implanted in Aldridge were unfit for their intended purpose, such that genuine issues of material fact preclude entry of summary judgment for defendants on plaintiff's claim for breach of the implied warranty of merchantability.

### E.   *Unjust Enrichment Claim (Count XV).*

In Count XV, Aldridge asserts a claim of unjust enrichment. As their sole ground for seeking dismissal of this claim, defendants argue that Alabama law bars plaintiffs from bringing unjust enrichment claims alongside express warranty claims. This appears to be a correct statement of Alabama law. *See, e.g., White v. Microsoft Corp.*, 454 F. Supp.2d 1118, 1133 (S.D. Ala. 2006) ("where a plaintiff has brought claims sounding in both express contract and quasi-contract as to the same subject matter, Alabama courts have deemed the quasi-contract claim not to be cognizable"); *Carter v. L'Oreal USA, Inc.*, 2017 WL 3891666, *3 (S.D. Ala. Sept. 6, 2017) ("When there is no dispute between the parties that an express warranty exists and a plaintiff alleges a breach of the express warranty, that plaintiff cannot also allege an unjust enrichment claim."); *see generally In re 100% Grated Parmesan Cheese Marketing and Sales Practices*

*Litigation*, 393 F. Supp.3d 745, 765 (N.D. Ill. 2019) (stating that, under Alabama law, "Plaintiffs cannot recover for unjust enrichment if an express contract covers the same subject matter"). Nonetheless, defendants' argument for dismissal of Count XV fails because Aldridge has conceded dismissal of her express warranty claim (Count X), such that she no longer is bringing an unjust enrichment claim alongside an express warranty claim. Defendants having asserted no other grounds for dismissing Count XV, the Motion is properly **denied** as to that cause of action.

IV.  **Conclusion.**

For all of the foregoing reasons, Defendants' Motion for Partial Summary Judgment (doc. 33) is **granted in part and denied in part**. The Motion is **granted** as to Counts II, X, XI and XIII, all of which are **dismissed with prejudice**. In all other respects, the Motion is **denied**.

The MDL transferor court has previously recommended that this action be set for trial immediately because discovery is complete. (Doc. 43, PageID.1086). Accordingly, it is **ordered** as follows:

1. The Final Pretrial Conference for this action is set for **July 21, 2020 at 10:00 a.m.** This is a firm setting and the parties are expected to be ready for trial by the pretrial conference. A copy of the undersigned's standing order governing pretrial conferences is attached.
2. This action will come on for jury selection on **August 4, 2020 at 8:45 a.m.** in Mobile, Alabama, and for trial during the **August 2020** civil term, the specific dates to be set at the Final Pretrial Conference.
3. The deadline for disclosing the information required by Rule 26(a)(3), Fed.R.Civ.P. shall be **June 30, 2020**.
4. All challenges to expert witnesses, including *Daubert* motions, must be filed not later than **June 30, 2020**.
5. The parties are **ordered** to file a written assessment of the possibility of resolving the issues in this case through a recognized ADR procedure no later than **April 30, 2020**. The parties are reminded that they may contact Magistrate Judge Bivins at any time if they believe mediation or a settlement conference would be beneficial.

DONE and ORDERED this 19th day of March, 2020.

        s/ WILLIAM H. STEELE
        UNITED STATES DISTRICT JUDGE